AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original   ☐ **CLERK'S OFFICE**



A TRUE COPY
Nov. 20, 2024
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

In the Matter of the Search of                    )
*(Briefly describe the property to be searched*    )
*or identify the person by name and address)*      )   Case No. **24-M-541 (SCD)**
a Gray/Black Apple iPhone currently in the custody of HSI Special   )
Agent Julius Klevinskas at the HSI Milwaukee Office at 790 N.       )
Milwaukee St., Suite 600, Milwaukee WI 53202, secured in the        )
temporary evidence room further described in Attachment A           )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____12-4-24_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Stephen C. Dries_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   **11-20-24. 10:20 am**            *Stephen C. Dries*
                                                              *Judge's signature*

City and state:   *Milwaukee, Wi*            Stephen C Dries, Magistrate Judge
                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**ATTACHMENT A**</u>

The property to be searched is a Gray/Black Apple iPhone cellphone belonging to Jeffrey Tindall. The Apple iPhone has a Gray/Black semi-see through case. The APPLE IPHONE is currently in the custody of HSI Special Agent Julius Klevinskas at the HSI Milwaukee Office at 790 N. Milwaukee St., Suite 600, Milwaukee WI 53202, secured in the temporary evidence room.

 

# ATTACHMENT B

*Property to Be Seized*

1.      All records on the APPLE IPHONE described in Attachment A that relate to violations of Title 18, United States Code (U.S.C.) Sections 371, 2314, and 2315 occurring after July 17, 2020, including:

      a.   Records and information relating to the possession of, transportation, sale, procurement, search for, and concealment of stolen goods and disposition of proceeds from the sale of stolen items.

      b.   Records and information related to the financial transactions related to the sale or purchase of stolen goods.

      c.   Records and information regarding the formation and operation of companies, corporations, and LLCs.

      d.   All records of earning including any IRS forms, federal income tax returns, and any state tax returns. Any records and/or correspondence to or from tax advisors or return preparers.

      e.   All photographs, videos, or other depictions of property and/or stolen items that are or have been listed for sale.

      g.   All records or items which could be used to facilitate thefts.

      h.   Records and information relating to communications with co-conspirators.

2.      Evidence of user attribution showing who used or owned the APPLE IPHONE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the Internet to sell stolen goods on e-commerce websites including:

     a.  records of Internet Protocol addresses used;

     b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.



CLERK'S OFFICE
A TRUE COPY
Nov 20, 2024
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

a Gray/Black Apple iPhone currently in the custody of HSI Special Agent Julius Klevinskas at the HSI Milwaukee Office at 790 N. Milwaukee St., Suite 600, Milwaukee WI 53202, secured in the temporary evidence room further described in Attachment A

)
)
)
)
)
)
)

Case No. 24-M-541 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 2314, 2315, and 371 | Interstate Transportation of Stolen Property, Possession or Receipt of Stolen Property, and Conspiracy to Commit those offenses |

The application is based on these facts:

See Attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Julius Klevinskas*

*Applicant's signature*

Julius Klevinskas, HSI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

Telephone _____ *(specify reliable electronic means)*.

Date: 11-20-24

*Judge's signature*

City and state: Milwaukee, Wi

Stephen C Dries, Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Julius Klevinskas, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information descried in Attachment B.

2.      I am a sworn law enforcement officer currently employed as a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI) and have been so employed since approximately January 2023. I am currently assigned to the Chicago Field Division – Milwaukee Resident Office (RAC). Since becoming a Special Agent, I have received specialized training in various aspects of law enforcement and my responsibilities include conducting investigations of alleged criminal violations of federal statutes and laws. Prior to my tenure as a HSI Special Agent, I was a Diversion Investigator with the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), Milwaukee District Office, from approximately July 2019 to January 2023.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence and instrumentalities of violations of Title 18, United

1

States Code, Sections 2314 (interstate transportation of stolen property), 2315 (possession or receipt of stolen property), and 371 (conspiracy to commit those offenses), will be found on the APPLE IPHONE, further described in Attachment A.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

5.     The property to be searched is an Apple iPhone (unknown model and unknown serial number) (APPLE IPHONE). The APPLE IPHONE is currently in the custody of HSI Special Agent Julius Klevinskas at the HSI Milwaukee Office at 790 N. Milwaukee St., Suite 600, Milwaukee WI 53202, secured in the temporary evidence room. The APPLE IPHONE is further described in Attachment A.

6.     The applied-for warrant would authorize the forensic examination of the APPLE IPHONE for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

*Overview*

7.     Since approximately 2014, local, state, and federal authorities in the Chicago, Illinois area and elsewhere have been investigating a group of people primarily of Polish descent known as Polish Travelers who are believed to be responsible for organized retail theft crimes across the country. The investigation has revealed that members of the group travel across the country in vehicles registered in fictitious names, targeting brick-and-mortar retailers for theft of concealable high-value items such as small electronics, printer ink, cosmetics, and pet products. The thieves then mail the stolen property back to the Chicagoland area, where they are received by fences.[1] The stolen property is then re-sold on e-commerce platforms. In September of 2019,

---

[1] A "fence" is a person or group of people who knowingly buys stolen goods and resells them for a profit.

2

more than two dozen co-conspirators from this group were indicted in the Northen District of Texas, Case No. 19-CR-451 (N.D. Texas), and were ultimately convicted of conspiracy to commit interstate transportation of stolen property.

8.     The investigation has continued into members of the Polish Travelers who remain active in organized retail theft. While investigating the pattern of life and method of business operations of some such members, investigators identified SEBASTIAN NOWAK (NOWAK) and ROZALIA WISNIEWSKA (WISNIEWSKA) as Polish Travelers based in the Chicagoland area with likely involvement in organized retail theft.

9.     As described further below, NOWAK and WISNIEWSKA traveled from Illinois to locations across the country to steal products from retail stores. They then packaged and shipped the stolen products, typically through UPS Store locations, to co-conspirators JEFFREY TINDALL (TINDALL) and MATEUSZ (MATT) PANSZCZYK (PANSZCZYK) in northern Illinois. The stolen products were typically transported to a home in Bristol, Wisconsin, but the investigation later showed that the stolen products were transported to a warehouse in Kenosha, Wisconsin for temporary storage. The stolen products were then sold online via e-commerce platforms such as eBay and Amazon through accounts held by TINDALL and PANSZCZYK.

10.     I know from my training and experience that there is a large amount of money associated with organized retail theft and the subsequent sale of stolen products. Based on this investigation and information provided by Arlington Heights, Illinois Police Department (AHPD) detective Ryan Pacyga, I believe TINDALL and PANSZCZYK are knowingly procuring stolen goods from NOWAK and WISNIEWSKA (and other unknown individuals) and then selling the stolen products online for profit.

*Examples of NOWAK's and WISNIEWSKA's Retail Thefts*

3

11.     **Dunwoody, Georgia.** Investigation by AHPD Det. Pacyga revealed that on or about November 9, 2015, NOWAK and WISNIEWSKA were arrested at Walmart located at 4725 Ashford Dunwoody Road in Dunwoody, Georgia. Per the Dunwoody Police Department report, a Walmart loss prevention officer observed NOWAK obtain multiple computer hard drives and Texas Instrument Calculators. NOWAK and WISNIEWSKA then moved to the shoe department, at which time WISNIEWSKA placed the items into her pants underneath her coat. NOWAK and WISNIEWSKA then proceeded past the last point of sale, at which time they were detained. The total loss was estimated at $1,139.00 USD. NOWAK and WISNIEWSKA were both charged with Felony Shoplifting.

12.     **Allen, Texas.** Further investigation by AHPD Det. Pacyga revealed that on or about March 22, 2019, NOWAK and WISNIEWSKA were arrested at the Antique Mall of Allen located at 104 N. Greenville Avenue in Allen, Texas. Per the complainant, NOWAK and WISNIEWSKA were attempting to access a locked display case holding purses. The reporting officer reviewed surveillance video and observed NOWAK and WISNIEWSKA approach a locked display case. WISNIEWSKA retrieved keys from her pocket and handed them to NOWAK. NOWAK attempted to enter the display utilizing the keys without success. A search of WISNIEWSKA resulted in the recovery of three keys typically used to access retail display cases, an anti-theft jamming device, heavy duty magnets utilized for removing security devices, and a homemade shim utilized to defeat simple case locks. Both NOWAK and WISNIEWSKA were charged with Attempted Theft. WISNIEWSKA was also charged with Possession of Criminal Instruments.

13.     **Algonquin, Illinois**. In early September 2023, AHPD Det. Pacyga established surveillance at the apartment occupied by NOWAK and WISNIEWSKA in Niles, Illinois, and

4

observed NOWAK and WISNIEWSKA exit the apartment and enter a vehicle (NOWAK's vehicle). The detective then conducted an inquiry through FLOCK, a nation-wide license plate recognition service. This inquiry revealed the vehicle was in the area of South Elgin, Illinois, on or about September 2, 2023, in close proximity to a Dick's Sporting Goods store (DSG) in Geneva, Illinois. AHPD Det. Pacyga contacted DSG's district loss prevention officer, who reviewed surveillance footage and determined that persons appearing to be NOWAK and WISNIEWSKA entered the DSG store on or about September 2, 2023. A police report was then filed with the AHPD, indicating that NOWAK and WISNIEWSKA entered the store (1816 S. Randall Road, Algonquin, Illinois) at approximately 12:20PM and took a direct route to the area containing pickleball paddles and equipment. WISNIEWSKA was observed leaning into a shelving unit containing paddles, making small, shifty movements with her body. NOWAK and WISNIEWSKA then exited the store at approximately 12:23PM without making a purchase. A subsequent inventory check revealed four Ben Johns Persus Pickleball Paddles had been stolen, with a value totaling approximately $1,000.00 USD. Based on my training, experience, and the investigation to date, I believe that NOWAK and WISNIEWSKA committed retail theft of the pickleball paddles.

*DirectBuyCity LLC*

14.     On or about August 22, 2023, AHPD Det. Pacyga established surveillance on the apartment occupied by NOWAK and WISNIEWSKA located in Niles, Illinois. At approximately 11:40AM, AHPD Det. Pacyga observed an unknown male subject and unknown female subject enter a vehicle. The vehicle then traveled to the UPS Store located at 310 Busse Highway in Park Ridge, Illinois. At approximately 11:50AM, the male subject exited the vehicle and retrieved a large carboard box from the interior of the vehicle. The male subject then brought the box inside the UPS Store. At approximately 11:54AM, the male subject exited the UPS Store, re-entered the

5

vehicle, and exited the area.

15.     AHPD Det. Pacyga entered the UPS Store and learned the package was shipped by Adam Codd (Phone Number: 630-661-8585) to TINDALL, Direct Buy City LLC, 2189 N. IL Route 83, Round Lake, IL 60073. Adam Codd was determined to be a non-existent person. Further investigation revealed Direct Buy City LLC (DIRECTBUYCITY) was an active Illinois entity originally registered through the Illinois Secretary of State (FILE # 08960895) on July 17, 2020. Per the Illinois Secretary of State, TINDALL was the listed business manager, with a listed business address of 502 Poplar Avenue in Antioch, Illinois. An open-source internet inquiry revealed DIRECTBUYCITY had an active website (www.directbuycity.com), which sold various beauty products such as Clarins face creams, facial cleansing devices, and pickleball paddles.

16.     DIRECTBUYCITY also has an active eBay seller profile (seller name directbuycity_1), which listed various products for sale, including: flea and tick medications, beauty supplies, pickleball paddles, and printer ink. These are all products commonly targeted by Polish Travelers during the commission of retail thefts. At the time of this Affidavit (November 19, 2024), the public eBay page associated with directbuycity_1 (https://www.ebay.com/str/directbuycity1) appeared to show "29k" (i.e., 29,000) items sold, with account creation ("member since") listed as September 15, 2017.

17.     On or about August 24, 2023, AHPD Det. Pacyga received records from eBay related to seller profile directbuycity_1. The documentation from eBay revealed the following information: Company Name: DirectBuyCity LLC, eBay User ID: directbuycity_1, Full Name: Jeffrey L Tindall Jr., Shipping Address: Matt Panszczyk, 21225 116th Street, Bristol, WI 53104.

*Tracking NOWAK's Vehicle*

18.     On or about September 11, 2023, Judge Jill C. Marisie of the Circuit Court of Cook

6

County, Illinois authorized a tracking order for NOWAK's vehicle. A tracking device was subsequently placed on NOWAK's vehicle on or about September 12, 2023.

19.    On or about September 15, 2023, the vehicle, driven by NOWAK, traveled to Starbucks Coffee located at 7410 118th Avenue in Kenosha, Wisconsin. Surveilling detectives saw NOWAK exit the vehicle and meet with TINDALL in the middle of the parking lot. NOWAK and TINDALL shook hands and hugged, after which time both entered the vehicle; NOWAK was seated in the front driver's seat, TINDALL was seated in the front passenger's seat. While seated inside the vehicle, it appeared TINDALL handed NOWAK a white colored envelope. TINDALL then exited the vehicle and walked northbound through the parking lot. At approximately 1:22PM, NOWAK's vehicle exited the area southbound on I-294.

20.    Between approximately September 16, 2023 and September 26, 2023, AHPD Det. Pacyga monitored the vehicle via a mobile tracking application as it traveled to Indiana, Tennessee, Georgia, New York and New Jersey. According to AHPD Det. Pacyga, during this period of time, NOWAK and WISNIEWSKA committed retail thefts at the following retail establishments: fourteen confirmed thefts at Ulta stores totaling a loss of approximately $15,000.00 USD; three confirmed thefts at Best Buy totaling approximately $2,477.78 USD; ten thefts at DSG (loss amount unknown); and three confirmed thefts at REI totaling approximately $2,500.00 USD. AHPD Det. Pacyga confirmed these thefts by working with loss prevention at the stores to obtain and review surveillance footage confirming that NOWAK and WISNIEWSKA were there and appeared to steal items and then confirmed that the items were missing through an updated inventory count. During this period of time, NOWAK and WISNIEWSKA also sent approximately five packages via UPS to TINDALL's UPS mailbox located in Round Lake Beach, Illinois.

21.    On or about October 26, 2023, a tracking order extension was granted for

NOWAK's vehicle through the Cook County Circuit Court. Upon approval, a tracking device was attached to NOWAK's vehicle on or about October 27, 2023.

22.     According to AHPD Det. Pacyga, between approximately November 3, 2023, and November 24, 2023, NOWAK and WISNIEWSKA committed over twenty additional retail thefts from various retailers in Illinois, Indiana, Missouri, Mississippi and Georgia, with the total loss amount exceeding $30,000.00 USD. During that same period of time, NOWAK and WISNIEWSKA completed at least four shipments to TINDALL's UPS mailbox in Round Lake Beach, Illinois.

*UPS Package Intercept*

23.     In reviewing tracking data, AHPD Det. Pacyga noted that on or about September 20, 2023, NOWAK's vehicle visited The UPS Store (Store #4261) located at 2566 Shallowford Road NE, Suite 104, Atlanta, Georgia. Per the tracking data, the vehicle was present at the location from approximately 2:24PM until 2:38PM. AHPD Det. Pacyga contacted a representative from The UPS Store and advised them of this investigation. The representative subsequently provided a "UPS Shipment Details" form, which indicated a package (UPS tracking #1Z1387R70308122616) was shipped on or about September 20, 2023, to TINDALL's UPS mailbox in Round Lake Beach, Illinois.

24.     In anticipation of the package's arrival to Illinois, on or about September 21, 2023, AHPD Det. Pacyga obtained approval for a package search warrant through Cook County, Illinois. On or about September 22, 2023, at approximately 7:40AM, AHPD Det. Pacyga executed the warrant upon the package's arrival to the UPS facility in Palatine, Illinois. The detective removed and photographed the package's contents. The approximate total value of the products contained in the package was $8,314.70 USD. AHPD Det. Pacyga noted the items observed inside the

8

package are consistent with the products being sold by TINDALL through his eBay seller profile directbuycity_1. Along with suspected stolen product, the package included a hand-written receipt that detailed item names with an accompanying number next to each name. In reviewing the contents of the package, the receipt was consistent with the number or products within the package. The package included pickleball paddles, beauty products, and electronics. Two of the products (Dermalogica Firming Serum and Clarins Double Serum) still had Ulta security stickers on the exterior of their packaging.

25. The package was then re-packaged with the items and the box was re-sealed. After being resealed, the package was subsequently delivered to Round Lake Beach, Illinois, without incident.

### *UPS Shipments and TINDALL Surveillance*

26. In reviewing tracking data related to the travels of NOWAK and WISNIEWSKA, AHPD detective learned NOWAK and WISNIEWKA completed two shipments to TINDALL on or about November 10, 2023, and November 11, 2023, respectively. In anticipation of TINDALL receiving the packages sent by NOWAK and WISNIEWSKA, on or about November 13, 2023, surveillance was established at the UPS Store in Round Lake Beach, Illinois by AHPD Det. Pacyga. At approximately 5:30PM, TINDALL arrived at the UPS Store driving his 1998 white Honda Accord bearing Illinois registration EC79557. TINDALL parked in front of the store and exited the vehicle. At approximately 5:33PM, TINDALL entered the store with four cardboard boxes. At approximately 5:36PM, TINDALL exited the store carrying two large boxes, which were loaded into the Honda. TINDALL then re-entered the store. At approximately 5:37PM, TINDALL exited the store carrying one large box, which was also loaded into the Honda. AHPD detective noted all three of the boxes that TINDALL took from the store to his car were consistent in general

9

appearance with the boxes previously sent by NOWAK and WISNIEWSKA.

27.     According to AHPD Det. Pacyga, at approximately 5:41PM, TINDALL traveled to the United States Postal Service (USPS) Post Office located at 1940 Municipal Way, Round Lake, Illinois. At this time, TINDALL exited the Honda and retrieved two large, clear plastic garbage bags each containing multiple, smaller packages inside of them. TINDALL then entered the Post Office. At approximately 5:45PM, TINDALL exited the Post Office without the aforementioned bags. Based on my training, experience, and the investigation to date, I believe TINDALL was mailing packages that he sold on an e-commerce platform to customers. TINDALL re-entered the Honda and traveled to PANSZCZYK's residence, located at 21225 116th Street, Bristol, Wisconsin, where he arrived at approximately 6:05PM.

*Surveillance at 21225 116th Street, Bristol, WI*

28.     On or about November 28, 2023, AHPD Det. Pacyga established surveillance at 21225 116th St., Bristol, Wisconsin. AHPD Det. Pacyga observed multiple vehicles parked in the driveway of the residence including TINDALL's white 1998 Honda Accord bearing Illinois registration EC79557 and a tan 2013 Chevrolet Silverado bearing Wisconsin registration UC8055. A subsequent inquiry through the Illinois Secretary of State via LEADS revealed the Chevrolet Silverado was registered to both Rodney Frahm (FRAHM) at 6018 241st Avenue in Salem, Wisconsin and PANSZCZYK at the Bristol, Wisconsin address.

29.     At approximately 3:00PM, AHPD Det. Pacyga observed a subject wearing a red hooded sweatshirt (SUBJECT 1) walk toward the Chevrolet, which was still parked in the driveway of the residence. SUBJECT 1 appeared to be carrying at least one large bag at this time. After a moment, SUBJECT 1 appeared to return to the residence.

30.     At approximately 4:50PM, the Chevrolet exited the driveway and proceeded to

10

USPS Office located at 1940 Municipal Way, Round Lake, Illinois. At approximately 5:15PM, SUBJECT 1 entered the Post Office carrying two large clear bags holding multiple packages inside each. SUBJECT 1 then exited and returned to the Chevrolet. SUBJECT 1 obtained two additional large, clear bags and brought them inside the Post Office. Based on my training, experience, and the investigation to date, I believe SUBJECT 1 was mailing packages that were sold on an e-commerce platform to customers.

31.     At approximately 5:25PM, SUBJECT 1 exited the Post Office and returned to the Chevrolet. SUBJECT 1 then proceeded to the UPS Store located at 2189 N. Rt. 83, Round Lake Beach, Illinois. At approximately 5:30PM, SUBJECT 1 parked the Chevrolet immediately in front of the UPS Store. SUBJECT 1 then removed approximately four large, brown boxes from the bed of the Chevrolet and brought them inside the UPS Store. Shortly thereafter, SUBJECT 1 exited the store with five large, brown boxes – consistent with boxes typically shipped by NOWAK and WISNIEWSKA. The boxes were placed inside the Chevrolet. SUBJECT 1 exited the area and returned to PANSZCZYK's residence in Bristol, Wisconsin. Based on my training, experience, and the investigation to date, I believe that SUBJECT 1 was dropping off packages to be shipped by UPS and also picking up packages that contained stolen goods.

*Trash Pull at 21225 116th Street, Bristol, WI on February 8, 2024*

32.     On or about February 8, 2024, a trash pull was conducted at 21225 116th St., Bristol Wisconsin. Three medium size white colored plastic bags were recovered, along with numerous cardboard boxes. Of note, multiple empty boxes/packages addressed to PANSZCZYK and/or MP MEDIA SALES at the Bristol, Wisconsin address were recovered. Multiple empty boxes/packages addressed to TINDALL and/or DIRECTBUYCITY at 2189 N. Rt. 83, Number 262, Round Lake, IL 60073 (UPS Store) were also recovered. Approximately seven of the packages/boxes addressed

11

to TINDALL / DIRECTBUYCITY had an additional sticker affixed to them, which indicated the package/box was received via UPS with the number "262" printed on it. "262" is the mailbox number associated to TINDALL at the Round Lake, Illinois UPS Store. Multiple Amazon.com/eBay return slips addressed to PANSZCZYK, TINDALL, and MP MEDIA SALES were also recovered.

33.     Multiple items related to the packaging/shipping of products were recovered, including used rolls of tape, empty bags of bubble mailer envelopes, and a used bottle of the product "Goo Gone"—a product commonly used to remove retail stickers and other similar items affixed to retail products. Also recovered was an anti-theft security tag commonly affixed to various retail products.

*MP Media Sales LLC*

34.     A search of the Wisconsin Department of Financial Institutions website showed that MP MEDIA SALES is a Wisconsin Domestic Limited Liability Company, registered on or about January 17, 2022. The Articles of Organization associated with MP MEDIA SALES showed that PANSZCZYK was listed as the only member of the business.

35.     An open-source internet inquiry revealed MP MEDIA SALES has an active website (www.mpmediasales.com), which sells various flea and tick medications. As of the time of this Affidavit (November 19, 2024), the address of 21225 116th St, Bristol, WI 53104 was listed under the Refund Policy page of the website (https://mpmediasales.com/pages/re).

36.     An open-source internet inquiry also revealed MP MEDIA SALES had an Amazon account under the name "MP Media Sales LLC" with an address listed as 21225 116th St., Bristol, WI 53104, which had various items listed for sale, some of which included pickleball paddles and Texas Instrument (TI) Calculators.

12

37.     An open-source internet inquiry also revealed a YouTube channel titled MP Media Sales LLC, with handle @mpmediasalesllc, that includes several short videos of a person unboxing packages from Amazon. The person depicted on the channel's homepage and in the videos is similar in appearance to booking photographs of PANSZCZYK.

*Trash Pull at 21225 116th Street, Bristol, WI on April 4, 2024*

38.     On or about April 4, 2024, a trash pull was conducted at 21225 116th St., Bristol Wisconsin. Nine medium size white colored plastic bags were recovered, along with numerous cardboard boxes. Of note, multiple empty packages were recovered. These packages were addressed to PANSZCZYK, MP MEDIA SALES LLC, at the aforementioned Bristol, Wisconsin address and TINDALL at the UPS Store in Round Lake Beach, IL. Multiple discarded shipping labels were also recovered including UPS labels listing Scott Johnson (Midwest Products, 4623 75th Street, Unit 178, Kenosha, WI) as the recipient. This is the address of a UPS store (KENOSHA UPS STORE).

39.     Two cease-and-desist letters were recovered that originated from Vorys, Sater, Seymour & Pease Law Firm and were addressed to PANSZCZYK/MP MEDIA SALES LLC. The first letter, dated July 13, 2023, was regarding the unauthorized sale of Black Diamond Products by Amazon seller MP Media Sales LLC. This letter demanded MP MEDIA SALES immediately remove Black Diamond Products from their seller page. The second letter, dated November 9, 2023, was regarding the unauthorized sale of Lutron products by Amazon seller MP Media Sales LLC. The content of the correspondence indicated a cease-and-desist letter was originally sent to PANSZCZYK on or about October 19, 2023, at which time he was demanded to remove all Lutron products from the aforementioned Amazon storefront. Furthermore, the current letter acted as a "trigger for you [PANSZCZYK] to institute a legal hold regarding this legal dispute. It also stated,

13

"You [PANSZCZYK] are on formal notice not to intentionally destroy or intentionally permit the destruction of data or documents relevant to this dispute." The letter again demanded PANSZCZYK remove all Lutron products from his Amazon storefront.

40.     Nine Alpha brand anti-theft devices were recovered, which appeared to have been individually defeated/removed from products. Shipping products, such as used heavy duty tape rolls and sticker labels, were also recovered. Also located were multiple computerized product inventory/shipping logs, which showed products sold by MP MEDIA SALES and DIRECTBUYCITY such as: Lancôme beauty products, Selkirk Vanguard pickleball paddles, Clarins beauty products, Dermalogica beauty products and Frontline pet products.

41.     There were also two handwritten inventory logs/invoices, one of which appeared to show a product count and cost to be paid for the stolen item. The products listed on this note included Google Nest, Texas Instrument calculators, Lutron products, Ring Doorbell products, and Frontline pet products. The cost of the items was significantly lower (approximately half) of the retail price of the items. For example, the invoice listed three TI-84 Plus calculators for $50 each. Walmart appears to sell the calculators for approximately $94 at the time of this affidavit (November 19, 2024). Based on my training, experience, and investigation to date, the low price that they are paying for the items suggests that the items were stolen.

*Scott Johnson and MidwestProductPros LLC*

42.     In response to a grand jury subpoena, the KENOSHA UPS STORE indicated that Mailbox Number 178 was registered to Scott Johnson, 7120 284th Ave., Salem, Wisconsin (email address directbuycity@gmail.com). Based on the label described in Paragraph 38, I searched Wisconsin Department of Financial Institutions and found a business named MidwestProductPros LLC with Scott Johnson listed as the member.

14

43.     On or about May 10, 2024, United States Magistrate Stephen Dries, signed a search warrant for the email addresses of directbuycity@gmail.com and mpmediasales@gmail.com. Subsequently, I received and reviewed the emails from those accounts. Correspondence from directbuytcity@gmail.com[2] indicates that MidwestProductPros LLC is controlled by TINDALL and/or PANSZCZYK. For example, directbuycity@gmail.com emailed thefunnelguru@gmail.com[3] (Funnel Guru) stating, "I have a different Amazon account I would like to use for that. Just in case they suspend me on my directbuycity account. The email for that is midwestproductpros@gmail.com. I opened the account at the beginning of the year and have good feedback."

44.     Based on my training, experience, and the investigation to date, I know that it is common for fences to have multiple accounts at e-commerce sites (such as Amazon) in different names and/or businesses in the event that one of their accounts is taken down or suspended.

45.     The search warrants revealed numerous other emails of interest. For example, in October of 2022, directbuycity@gmail.com corresponded with Funnel Guru about how he gets brands unlocked and wrote "Thank you for your service that you provide . . . . I thought you just photoshop some documents and upload them." Based on my training, experience, and the investigation to date, this email shows that whoever was controlling the directbuycity@gmail.com (TINDALL and/or PANSZCZYK) believed they were paying Funnel Guru to produce fraudulent invoices to help them sell their stolen goods on Amazon.

---

[2] Email communication indicates that TINDALL is the primary user of the email account, however, during a Mirandized interview of TINDALL on November 14, 2024, TINDALL stated that he did not have access to the email account. Additionally, there is at least one occasion where an individual emailing the account addresses the email to "Matt" believed to be PANSZCZYK.

[3] The Funnell Guru is a service that, for a fee, helps Amazon sellers "ungate" (*i.e.* being allowed to sell) products, brands, or categories on Amazon.

46.     On or about November 7, 2022, directbuycity@gmail.com sent an email to "lynn" at zhulynn1227@hotmail.com that stated "I just took down all my clarins and Luna I have  I priced everything one third of retail.  I'm looking to sell the whole lot."  Based on my training, experience, and the investigation to date, I believe that the fact that TINDALL and/or PANSZCZYK can sell items for one third of retails price indicates that the items were stolen.

47.     On or about August 24, 2023, mpmediasales@gmail.com emailed thefunnelguru@gmail.com indicating an issue with Amazon:

"I sent Selkirk paddles to FBA [Fulfillment by Amazon] and did not notice that the Brand was Generic.

A company filed Trademark on Product claim.  This caused amazon to hold my Selkirk paddles and delete the listings.  I have 78 paddles stuck and if I don't provide the documents they will destroy the items.

Can you please help me out ? If you could somehow provide an invoice that shows they are bought from an authorized dealer ?

Honestly it's around 8k worth of paddles.  I can pay you like 2k if you can provide the documents to get them sent back to me ?"

48.     Funnel Guru replied "Have you submitted your invoice to amazon and see what they say"

49.     MP Media Sales responds "No, I have not yet.  We bought them off eBay so I don't think an eBay invoice will work.  Anyway you could make an authorized dealer invoice ?"

50.     Funnel Guru responds "We usually dont make invoices and we always work with suppliers and get it from them as you know,amazon is so strict and they have a lot of verification process can you submit the ebay invoice once and see how it does?"

51.     On or about August 28, 2023, mpmediasales@gmail.com emailed inventory-appeals@amazon.com a long email asking for Amazon to return the inventory.  It states "The

paddles are genuine and authentic . . . ." and "I have attached an invoice that we purchased the paddles in May" The attached invoice is fraudulent and shows that MP MEDIA SALES bought the paddles from DIRECTBUYCITY. A review of the bank records for both companies appeared to show that there were no transactions between the two companies in the timeframe of the invoice, much less one that exactly matches the amount listed on the invoice ($21,260.57). Additionally, this fraudulent invoice is inconsistent with what mpmediasales@gmail.com told Funnel Guru—that the items were purchased from Ebay.

52.      On or about September 26, 2023, Josiah Nagel appears to purchase a lot of pet-related products and emailed directbuycity@gmail.com "One of our recent customers is requesting invoicing details showing the supply chain of these petsafe units. They are questioning the authenticity of the items. Are you able to share with us?" There is no record of a response. Based on my training, experience, and the investigation to date, PANSZCZYK and TINDALL could not show authentic invoices proving the authenticity of the items because they were stolen, which is why they did not respond with an invoice.

53.      On or about February 15, 2024, a customer named Nirav Vallabh emailed directbuycity@gmail.com regarding the cheap pickleball paddles he was selling and stated "This is original right and how come you able to sell it so cheap. I told everyone at my club house about your site yesterday." Based on my training, experience, and the investigation to date, the reason that PANSZCZYK and TINDALL could sell pickleball paddles cheaply was because the pickleball paddles were stolen.

*Surveillance at KENOSHA UPS STORE on August 7, 2024*

54.      On or about August 7, 2024, I established surveillance at the parking lot of the KENOSHA UPS STORE. At approximately 12:55PM, I observed a Gray/Tan Chevrolet Silverado

17

pickup truck, bearing Wisconsin license plate UC8055, pull up next to the entrance of the KENOSHA UPS STORE and activate the vehicle's emergency hazard lights. A male individual resembling FRAHM exited the driver's side of pickup truck and entered the KENOSHA UPS STORE. I observed the male individual exit the KENOSHA UPS STORE with a dolly and approximately 3-4 boxes. The male individual loaded the boxes onto the bed of the pickup truck and went back inside the KENOSHA UPS STORE retrieving more boxes. In total, approximately 10-15 boxes were loaded onto the bed of the pickup truck. Based on my training, experience, and the investigation to date, I believe FRAHM was picking up boxes containing stolen goods. Additionally, based on my training, experience, and the investigation to date, it is common for fences to use mailboxes at UPS (or other shipping businesses) to receive stolen goods to separate themselves from their illegal activities.

55.     At approximately 1:00PM, the male individual entered the driver's side of the pickup truck. I followed the pickup truck as it drove to the backside of a warehouse building located at 9522 58th Pl., Kenosha WI 53144 (KENOSHA WAREHOUSE). I observed individuals carry the boxes into Suite 400 of the KENOSHA WAREHOUSE.

*Surveillance at the KENOSHA WAREHOUSE on September 16, 2024*

56.     On or about September 16, 2024, surveillance was established at the KENOSHA WAREHOUSE. At approximately 10:34AM, a Chevrolet Silverado pickup truck, bearing Wisconsin license plate UC8055, was observed arriving at the location and parking in front of the front entrance of the KENOSHA WAREHOUSE. An individual resembling PANSZCZYK exited the driver's side of the vehicle and entered the KENOSHA WAREHOUSE.

57.     At approximately 11:29AM, Investigators observed a white Ford Sport Trac pickup truck, bearing Wisconsin license plate ATW8912, arrive at the location and park in front of the

18

front entrance of the KENOSHA WAREHOUSE. An individual resembling FRAHM exited the driver's side of the pickup truck.

58.　　At approximately 5:06PM, I observed the individual resembling FRAHM exit the KENOSHA WAREHOUSE, go to the bed of the Ford pickup truck, retrieve what appeared to be a stroller from the bed of the truck, and carry it inside the KENOSHA WAREHOUSE. Shortly after, I observed the individuals resembling FRAHM and PANSZCZYK exit the KENOSHA WAREHOUSE carrying three large white garbage bags and load them into the bed of the Ford pickup truck. Both of the individuals returned to the KENOSHA WAREHOUSE. I then observed the individual resembling FRAHM exit the KENOSHA WAREHOUSE carrying a piece of paper in his hand, enter the driver's side of the Ford pickup truck, and exit the parking lot driving East on 58th Pl. I followed the vehicle as it travelled to USPS located at 5605 Sheridan Rd, Kenosha, WI 53140.

59.　　At approximately 5:23PM, I observed the Ford pickup truck park on the street on the North side of the USPS building. I observed the individual resembling FRAHM exit the Ford pickup truck, retrieve the three white garbage bags from the bed of the vehicle, and enter the USPS building with the garbage bags. Shortly after, I observed the individual resembling FRAHM exit the USPS building empty handed. Based on my training, experience, and the investigation to date, I believe that FRAHM was mailing packages containing stolen goods that were sold on an ecommerce platform to customers.

60.　　The individual entered the driver's side of the vehicle and proceeded to drive East on 56th St. I followed the vehicle as it travelled to the KENOSHA UPS STORE.

61.　　At approximately 5:50PM, I observed the Ford pickup truck park in front of the KENOSHA UPS STORE. The individual resembling FRAHM exited the vehicle and entered the

19

store. Shortly after, the same individual exited the store with a dolly that appeared to have three medium/large boxes. The same individual loaded the boxes into the Ford pickup truck, re-entered the store, and exited with three more boxes on the dolly which were then loaded into the Ford pickup truck. Based on my training, experience, and the investigation to date, I believe that these boxes contained stolen goods. The individual resembling FRAHM re-entered the store and shortly after exited without a dolly, got into the driver's side of the Ford pickup truck, and proceeded to drive West on 75th St. towards the KENOSHA WAREHOUSE. At approximately 6:18PM, I observed the same individual bring the boxes, one at a time, from the Ford pickup truck to inside the KENOSHA WAREHOUSE.

*Trash Pull at the KENOSHA WAREHOUSE on September 16, 2024*

62. On or about September 16, 2024, Investigators conducted a trash pull in the dumpsters located in the back parking lot of the KENOSHA WAREHOUSE after observing individuals exit Suite 400 carrying multiple black trash bags/cardboard to the dumpsters located in the back parking lot. Investigators retrieved three black garbage bags and a large cardboard box. Investigators obtained the following evidentiary items from the trash pull:

a. Paperwork of what appeared to be inventory and/or shipping lists. In particular, it appeared that the lists had item quantity, item description, UPC number, weight, and name. Some of the items listed included merchandise that is commonly targeted by Polish Travelers during the commission of retail thefts, including Frontline flea medication, Lutron, Clarins, and Dermalogica products, as well as Selkirk pickleball paddles. A search of eBay for the above listed items appeared to show active listings for all of them with the same wording under account name "DirectBuyCity_1".

b. Multiple empty packages of retail merchandise, to include dermalogica phyto nature oxygen

cream, Capstar (nitenpyram) dog flea medication tablets (UPC 073091033370), and Selkirk

Vanguard Power S2 Red Pickleball Paddle (UPC 810009318705).

c.   Stickers/labels that appeared to be Amazon packing slips with seller name directbuycity.

<u>*Surveillance at USPS in Kenosha on September 30, 2024*</u>

63.     On or about September 30, 2024, I established surveillance at the USPS facility

located at 5605 Sheridan Rd, Kenosha, WI 53140, in anticipation of the targets of this investigation

dropping off packages. At approximately 5:20PM that same day, I observed a Chevrolet Silverado

pickup truck, bearing Wisconsin license plate UC8055, pull into the back area of the USPS facility

and backup to one of the overhead doors at the loading dock. An individual resembling FRAHM

exited the driver's side of the pickup truck and retrieved five white bags containing multiple small

packages within from the pickup truck and placed the bags onto the loading dock. Based on my

training, experience, and the investigation to date, I believe the individual resembling FRAHM

was mailing packages that were sold on an e-commerce platform to customers.

64.     With the permission from a USPS employee, I looked through the bags and noted

that the bags were filled with numerous boxes and/or bubble mailers that contained USPS Ground

Advantage and USPS Priority Mail labels shipping to various names/addresses throughout the

United States. The packages had three different names/addresses used for the shipper information:

MP MEDIA SALES LLC
21225 116TH ST
BRISTOL WI 53104-9600

DIRECTBUYCITY LLC (JEFF TINDALL)
2189 N. IL ROUTE 83 NUM 262
ROUND LAKE BEACH IL 60073-4906

MIDWESTPRODUCTPROS
4623 75TH UNIT 178
KENOSHA WI 53142-3707

21

*Trash Pull at the KENOSHA WAREHOUSE on October 31, 2024*

65.     On or about October 31, 2024, I conducted a trash pull in the dumpsters located in the back parking lot of the KENOSHA WAREHOUSE, the same dumpsters referenced in paragraph 62. I retrieved one large black garbage bag from the dumpsters and obtained the following evidentiary items:

a.  Multiple empty packages of retail merchandise, including SYLVANIA SILVERSTAR ULTRA H11 Headlight Bulbs and Seresto Cat Collars (tick/flea medication);

b.  Anti-theft security tag commonly affixed to various retail products;

c.  Paperwork of what appeared to be inventory and/or shipping lists. In particular, it appeared that the lists had item quantity, item description, UPC number, weight, and name. Some of the items listed included merchandise that is commonly targeted by Polish Travelers during the commission of retail thefts, including Frontline flea medication, Lutron, Clarins, and Dermalogica products, as well as pickleball paddles.

*Arrest of Jeffrey TINDALL*

66.     On or about November 12, 2024, an arrest warrant out of the United States District Court for the Eastern District of Wisconsin was signed by Judge Stephen C. Dries and issued for the arrest of TINDALL for violation of Title 18 U.S.C. § 371 (18 U.S.C. §§ 2314, 2315) -- conspiracy to transport stolen property interstate and conspiracy to possess or receive stolen property -- case number 24-M-522. On or about November 14, 2024, Special Agents from HSI Chicago and HSI Milwaukee along with Antioch Police Department arrested TINDALL at his residence located at 502 Poplar Ave., Antioch IL 60002. During the arrest of TINDALL, Special Agents seized a cellphone belonging to TINDALL, a gray/black Apple iPhone (APPLE IPHONE).

22

67.     On or about November 14, 2024, AHPD Det. Pacyga and I conducted an interview of TINDALL at the Kenosha County Sheriff's Office. Prior to the interview, TINDALL voluntarily agreed to waive his Miranda rights and signed a waiver of rights stating the same.

68.     During the interview, TINDALL stated that PANSZCZYK was his best friend and have been friends for 15 years. TINDALL stated that they were receiving products from "wholesaler" and selling the products on eBay and Amazon, but could not tell the Agents who the wholesalers were. TINDALL stated that they received up to 60 boxes a week. Some of the boxes contained hand-written invoices that listed what was inside the box. Agents showed TINDALL two hand-written invoices, one obtained during the September 2023 search warrant and one from a trash pull. While looking at the invoices, TINDALL told Agents that the numbers next to the items were for quantity and price of those items. TINDALL also indicated that the invoices in the boxes looked like the invoices shown by the Agents.

69.     TINDALL stated that him and PANSZCZYK communicated through text and that he had his number on his phone (APPLE IPHONE). TINDALL also stated that he had two numbers for PANSZCZYK, but later stated PANSZCZYK had two personal phones and one business phone.

70.     The APPLE IPHONE is currently in the custody of HSI Special Agent Julius Klevinskas at the HSI Milwaukee Office at 790 N. Milwaukee St., Suite 600, Milwaukee WI 53202, secured in the temporary evidence room.  In my training and experience, I know that the APPLE IPHONE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the APPLE IPHONE first came into the possession of the DHS, HSI.

## <u>TECHNICAL TERMS</u>

71.    Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b.   Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types

24

of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can

25

mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

72. Based on my training, experience, and research, I know that the APPLE IPHONE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

73. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet

26

are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

74.    *Forensic evidence.*    As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the APPLE IPHONE was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the APPLE IPHONE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may

27

depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to sell stolen goods on e-commerce platforms, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

75. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am *applying* for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

76. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the

28

physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

77.     I submit that this affidavit supports probable cause for a warrant to search the APPLE IPHONE described in Attachment A and seize the items described in Attachment B.

**<u>ATTACHMENT A</u>**

The property to be searched is a Gray/Black Apple iPhone cellphone belonging to Jeffrey Tindall. The Apple iPhone has a Gray/Black semi-see through case. The APPLE IPHONE is currently in the custody of HSI Special Agent Julius Klevinskas at the HSI Milwaukee Office at 790 N. Milwaukee St., Suite 600, Milwaukee WI 53202, secured in the temporary evidence room.

 

30

**ATTACHMENT B**

*Property to Be Seized*

1.      All records on the APPLE IPHONE described in Attachment A that relate to

violations of Title 18, United States Code (U.S.C.) Sections 371, 2314, and 2315 occurring after July

17, 2020, including:

     a.  Records and information relating to the possession of, transportation, sale,
procurement, search for, and concealment of stolen goods and disposition of proceeds
from the sale of stolen items.

     b.  Records and information related to the financial transactions related to the sale or
purchase of stolen goods.

     c.  Records and information regarding the formation and operation of companies,
corporations, and LLCs.

     d.  All records of earning including any IRS forms, federal income tax returns, and any
state tax returns. Any records and/or correspondence to or from tax advisors or return
preparers.

     e.  All photographs, videos, or other depictions of property and/or stolen items that are or
have been listed for sale.

     g.  All records or items which could be used to facilitate thefts.

     h.  Records and information relating to communications with co-conspirators.

31

2.       Evidence of user attribution showing who used or owned the APPLE IPHONE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.       Records evidencing the use of the Internet to sell stolen goods on e-commerce websites including:

      a.  records of Internet Protocol addresses used;

      b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

32